IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HARRY K. DOFNER, | ) | 8:10CV321 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

In this social security appeal, plaintiff Harry K. Dofner ("Dofner") argues that the Commissioner of Social Security ("Commissioner") committed reversible error in determining that he is not entitled to disability insurance benefits. For the reasons discussed below, the Commissioner's decision is affirmed.

**A.   Background & Administrative History**

On May 28, 1991, Dofner filed his original application for disability insurance benefits. (Tr. 33.) Thereafter, the Social Security Administration ("SSA") concluded that Dofner suffered from "major depression" and found him disabled as of September 1, 1992. (Tr. 26, 33.) On July 27, 1998, after performing a continuing disability review of Dofner's case, the SSA determined that Dofner's disability had ceased due to medical improvement. (Tr. 33.) Dofner disagreed and requested reconsideration. (*Id*.) In November 1999, an administrative law judge ("ALJ") reversed the SSA's determination because Dofner remained disabled within the meaning of the Social Security Act. (*Id*.)

On September 28, 2004, the SSA determined Dofner was no longer eligible for disability benefits because he failed to cooperate with the continuing review process. (Tr. 26, 61-63, 78.) Dofner requested reconsideration, and on June 2, 2005, a

disability hearing officer upheld the SSA's determination. (Tr. 26, 67-69, 73-81, 155, 165.) Dofner appealed the disability hearing officer's decision and a hearing was scheduled for January 9, 2006. (Tr. 86-87.) To confirm the hearing date, the SSA sent Dofner a notice of the hearing. (Tr. 98-101.) This notice informed Dofner that he could bring a person to represent him and outlined the issues to be considered at the hearing. (Tr. 86-89, 98-100.) Dofner's hearing was later rescheduled for August 6, 2006. (Tr. 104) To confirm the new hearing date, the SSA sent Dofner another notice of hearing that outlined the same issues to be considered. (Tr. 109-114.) Dofner failed to appear for his August 6, 2006, hearing because he experienced car trouble and the hearing was rescheduled for September 27, 2006. (Tr. 117, 120.) Again, the SSA sent Dofner a notice of hearing that outlined the same issues to be considered. (Tr. 120, 125-30.) The notice specifically stated:

> **Issues I Will Consider In Your Case**
>
> I will decide if you continue to qualify for a period of disability and disability insurance benefits under §216(i) and 223(a) of the Social Security Act ("Act"). To decide that issue, I will apply the standards stated in §223(f) of the Act and consider:
>
> • whether there has been any medical improvement in your impairment(s) since we last found you disabled, and, if so, whether the improvement relates to your ability to work; and
>
> • whether one of the exceptions to medical improvement stated in the Act and our regulations apply. If no medical improvement relating to your ability to work has occurred and no exceptions apply, I will find that your disability continues. *If I do not rule for you on that basis, I will consider whether you have become able to do substantial gainful work*. I will decide your case on this issue unless I find that you got a prior decision by fraud, you failed without good cause to cooperate in a continuing disability review, you cannot be found, or you failed without good cause to follow prescribed medical treatment that should permit you to work.

> Our regulations explain the rules for deciding if you are disabled and, if so, when you became disabled. These rules appear in the Code of Federal Regulations, Title XX, Chapter III, Part 404, Subpart p.

(Tr. 126-27 (emphasis added).)

After the hearing, on May 15, 2007, the ALJ found Dofner to be disabled within the meaning of the Social Security Act and reversed the SSA's determination that Dofner was no longer disabled because he failed to cooperate with the continuing review process. (Tr. 26, 367-75.) However, shortly after the ALJ issued his decision, the SSA payment center discovered evidence that Dofner engaged in substantial gainful activity by working for American Family Life Assurance Company ("AFLAC") in 2005 and 2006. (Tr. 26, 342, 398-407.) Dofner had also submitted a work activity report that showed he did not receive special work conditions, special payments, impairment related work expenses, or assistance from a vocational rehabilitation provider while working for AFLAC. (Tr. 401-04.) In light of this evidence, the SSA submitted a request to reopen the decision. (Tr. 26, 342.) The ALJ sustained the SSA's request, reopened the decision and scheduled another hearing. (*Id*.)

In preparation for the hearing, the SSA collected documents showing that Dofner earned $837.27 in December 2005 and $1,317.79, or more, each month from January 2006 through July 2006; AFLAC terminated him in August 2006. (Tr. 377-79, 412-15, 421.) The hearing was ultimately held on April 30, 2008. (*Id*.) At the hearing, the ALJ acknowledged his May 15, 2007, decision reversing the SSA's determination that Dofner was no longer disabled. (Tr. 342.) He also discussed his reasoning for reopening the case, namely to take more testimony regarding Dofner's work in 2005 and 2006. (*Id*.) The ALJ then questioned Dofner about his work at AFLAC. (Tr. 349-51.) Dofner admitted that he worked full-time at AFLAC from

3

December 2005 through August 2006. (Tr. 349.) In addition, the following exchange took place regarding Dofner's wages:

> ALJ: In '05, you made $16,045. Were you in sales?
> Dofner: No, customer service.
>
> . . .
>
> ALJ: . . . . Now we have the issue of your wages. Although you made almost $10,000 in 2006 I need to know how much you made a month and my staff has not been able to get this information.
> Dofner: More than likely I still have my pay stubs, but I don't know where they are because I moved.
> ALJ: Here, we do. They did send in something. I'm sorry. You made between $1,500 and $1,900 a month for January, February, March, April, May, June, July and August.

(Tr. 349-51.) At the end of Dofner's hearing testimony the ALJ asked: "Anything else you want to tell me?" (Tr. 357.) Dofner replied: "I can't think of anything." (*Id.*)

On May 16, 2008, the ALJ issued a new decision finding that Dofner had engaged in substantial gainful activity and was not disabled within the meaning of the Social Security Act. (Tr. 26-29.) In his decision, the ALJ followed the five-step sequential analysis prescribed by the Social Security Regulations to evaluate Dofner's disability claim.[1] *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ found as follows:

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled. These steps are described as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively

    1.     Dofner was found to be disabled within the meaning of the Social Security Act beginning September 1, 1992.

    2.     Dofner completed a trial work period that began in May 1994 and ended in November 1998 (20 CFR 404.1592(e)).

    3.     After completing the above trial work period, Dofner first performed substantial gainful activity in December 2005 (20 CFR 404.1571 *et seq.*)

    4.     Dofner's disability ended in December 2005, the first month after the completion of the trial work period in which Dofner engaged in substantial gainful activity (20 CFR 404.1529a(1) and 404(f)(1)).

(Tr. 28-29.) After the ALJ issued his decision, Dofner filed a timely request for a review hearing with the Appeals Council of the Social Security Administration. (Tr. 9.) On June 1, 2010, the Appeals Council denied Dofner's request for review. (Tr. 5-8.) Thus, the ALJ's decision stands as the Commissioner's final decision. On September 1, 2010, Dofner filed this social security appeal. (Filing 1.)

**B.    Standard of Review**

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v.*

---

> disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

*Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

**C.     Discussion**

In his appeal brief, Dofner argues that (1) the ALJ's decision is not supported by substantial evidence, (2) the SSA violated his due process rights by failing to "meaningfully" notify him of the issues to be considered at the April 30, 2008, hearing, and (3) the ALJ erred because he failed to fully develop the record. (Filing 19 at CM/ECF pp. 2-3, 6-8; Filing 28 at CM/ECF pp. 1-4.) The Commissioner contends that the ALJ's decision is supported by substantial evidence, Dofner had sufficient notice that his work activity was in question and the ALJ appropriately developed the record. (Filing 27 at CM/ECF pp. 7-13.) The court agrees with the Commissioner.

   *1.     Substantial Evidence*

Dofner argues that the ALJ's decision is not supported by substantial evidence because the record does not contain evidence to support the ALJ's determination that Dofner performed substantial gainful activity in December 2005. (Filing 19 at

6

CM/ECF pp. 7-8.) In response to this argument, the Commissioner filed a supplemental transcript that included records to support the ALJ's decision.[2] (Filings 25 and 27.) The Commissioner argues that the evidence in the supplemental transcript fully supports the ALJ's decision. (Filing 27 at CM/ECF p. 8.) The court agrees.

Pursuant to federal regulations, a disability insurance beneficiary is entitled to a nine-month trial work period during which the beneficiary may test their ability to work and still be considered disabled. 20 C.F.R. § 404.1592. A beneficiary is only entitled to one trial work period during a period of entitlement to cash benefits. *Id.* § 404.1592(c). If a beneficiary performs substantial gainful activity after completing a trial work period, the SSA will no longer consider the beneficiary disabled. *See Id.* §§ 404.1520(a)(4)(i) ("If you are doing substantial gainful activity, we will find that you are not disabled"); 404.1571 ("If you are able to engage in substantial gainful activity, we will find that you are not disabled."). The SSA uses guidelines to decide whether a beneficiary's work shows that the beneficiary is able to perform substantial gainful activity. *Id.* § 404.1574. Generally, if a beneficiary worked for substantial earnings, as set forth by the earnings guidelines, the SSA will find that the beneficiary is able to perform substantial gainful activity. *Id.* §§ 404.1574(a)(1), (b).

Dofner does not dispute that he completed a trial work period in November 1998, or that he worked full-time at AFLAC from December 2005 through July 2006. (Tr. 28, 418-19; Filings 19 and 28.) The supplemental transcript shows that Dofner earned $1,645.77 in 2005, and $9,914.65 in 2006. (Tr. 377-79, 412-15, 421.) Of the $1,645.77 that Dofner earned in 2005, $837.27 was earned in December. (Tr. 412-15, 421.) This amount exceeded the SSA's $830.00 substantial gainful activity earning guideline and created a presumption that Dofner had engaged in substantial gainful activity. (*Id.*) 20 C.F.R. § 404.1574(b)(2)(ii). The supplemental transcript also shows that Dofner's earnings were above the substantial gainful activity earning level from

---

[2] The Commissioner, in his brief in response, apologizes for initially submitting an incomplete administrative record. (Filing 27 at CM/ECF p. 8.)

December 2005 through August 2006. (Tr. 421.) Thus, even if Dofner had submitted evidence showing that his earnings should be reduced or that an impairment forced him to stop working, which he did not, the SSA would still consider his work at AFLAC substantial gainful activity. 20 C.F.R. § 404.1574(b)(5) (stating the SSA "will not consider work you performed at the substantial gainful activity earnings level for more than 6 months to be an unsuccessful work attempt regardless of why it ended or was reduced below the substantial gainful activity earnings level").

In short, substantial evidence on the record as a whole supports the ALJ's finding that Dofner competed a trial work period in November 1998 and then engaged in substantial gainful activity in December 2005. (Tr. 28-29.)

   2.   *Due Process Violation*

Dofner also argues that the SSA violated his due process rights by failing to "meaningfully" notify him of the issues to be considered at the April 30, 2008, hearing. (Filing 19 at CM/ECF pp. 2-3, 6-8; Filing 28 at CM/ECF pp. 1-4.) More specifically, Dofner argues that the September 27, 2006, Notice of Hearing was insufficient because it did not clearly indicate that the issue was whether Dofner "<u>had performed</u> substantial gainful employment." (Filing 28 at CM/ECF p. 2 (emphasis in original).)

"The Due Process Clause of the Fifth Amendment requires that, before property can be taken, notice and an opportunity for a hearing be provided."[3] *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008). "Adequate notice is that which is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997)

---

[3] The court assumes, without determining whether Dofner has a property interest in his benefits, that the due process clause applies to the denial of Dofner's benefits. *See Hepp v. Astrue*, 511 F.3d 798, 804 n.5 (8th Cir. 2008) (citing *Richardson v. Perales*, 402 U.S. 389, 401–02 (1971)).

(quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "Due process is a flexible concept and a determination of what process is due, or what notice is adequate, depends upon the particular circumstances involved." *Id*. at 1475.

Here, the September 27, 2006, Notice of Hearing clearly indicated that Dofner's ability to perform substantial gainful work was at issue. (Tr. 127.) This notice was one of three similar notices Dofner received regarding the hearing. (Tr. 98-101, 109-14.) In addition, the ALJ specifically explained that the reason for the additional hearing was the SSA's discovery of information that Dofner had worked in 2005 and 2006. (Tr. 342.) Further, although the ALJ advised Dofner he could proceed with representation, Dofner chose to represent himself, did not seek clarification regarding the issues at the hearing and failed to ask for additional time to explain his work activity. (Tr. 340-66.) Under these circumstances the court finds that notice was adequate and that Dofner had an opportunity to present objections. The SSA did not violate Dofner's due process rights.

### 3.     *Failure to Develop the Record*

In addition to the arguments above, Dofner asserts that the ALJ erred because he failed to fully develop the record. (Filing 19.) Dofner argues that the record was incomplete because he lacked understanding of the issues and did not get an "opportunity" to submit evidence showing that his work at AFLAC was not adequately performed. (*Id*. at CM/ECF p. 6-7.) This argument lacks merit.

As mentioned above, the record before the ALJ contained Dofner's signed work activity report showing that he did not receive special work conditions, special payments, impairment-related work expenses, or assistance from a vocational rehabilitation provider while he worked at AFLAC. (Tr. 401-04.) In addition, Dofner had the opportunity to submit evidence both before and during the April 30, 2008, hearing, but he chose not to do so. (*See* Tr. 344, 349-51.) Accordingly, the ALJ did not fail to fully develop the record with regard to evidence that Dofner's work at AFLAC was inadequate.

9

Although it is unclear, Dofner also appears to argue that he relied on the "advice" and "blessing" of the SSA in deciding to work at AFLAC and that the ALJ failed to fully develop the record with respect to this issue. (Filing 19 at CM/ECF pp. 3-4, 7.) However, the record does not contain any information showing that Dofner's alleged reliance on misinformation was at issue before the ALJ. Thus, the ALJ did not have notice of this issue and could not have known that development of the record was necessary. *See, e.g., Mouser v. Astrue,* 545 F.3d 634, 639 (8th Cir. 2008) ("Although an ALJ must fairly and fully develop the record in a social security disability proceeding, he is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.") Moreover, there is nothing in the record to indicate that the SSA or its agents did anything to mislead Dofner concerning the trial work period.

Dofner claims the ALJ did not give him an opportunity to provide the details that he was misled by the SSA. This contention is belied by the record. Before consulting the vocational expert, the ALJ asked: "Anything else you want to tell me?" (Tr. 357.) Dofner replied: "I can't think of anything." (*Id.*)

In sum, the ALJ's decision is consistent with the law and supported by substantial evidence on the record as a whole. Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

DATED this 13th day of September, 2011.

BY THE COURT:

s/*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.